# STATE OF MICHIGAN

# COURT OF APPEALS

JOSEPH LEO LOOFBORO,

　　　　Plaintiff-Appellee,

v

TERESA MARIE LOOFBORO,

　　　　Defendant-Appellant.

UNPUBLISHED
May 18, 2017

No. 330164
Allegan Circuit Court
LC No. 11-048871-DO

Before: MARKEY, P.J., and MURPHY and METER, JJ.

PER CURIAM.

Defendant, Teresa Marie Loofboro, appeals by right the judgment of divorce that the trial court entered after a bench trial. Teresa argues, among other things, that the trial court erred when it awarded the marital home to plaintiff, Joseph Leo Loofboro, when it refused to order Joseph to pay spousal support, but instead allowed her to retain possession of the marital home as a form of spousal support; and erred when it inequitably divided the marital estate. For the reasons more fully explained below, we affirm the judgment of divorce in every respect, except the award of spousal support. Because the trial court clearly erred when it determined that Joseph was not working and that error likely affected the trial court's calculation of an appropriate award of spousal support, we remand for the recalculation of the support award.

## I. BASIC FACTS

Joseph and Teresa married in 1988. They had two children, who were both adults by the time of the divorce. Joseph sued Teresa for divorce in August 2011. At the time of the complaint, Joseph was 53 years of age, and Teresa was 52 years of age.

The parties led a modest lifestyle and had limited assets. Testimony and evidence showed that Teresa suffered from various ailments and received approximately $800 per month from disability. Joseph also had some health issues but was still working as a bus driver with the local school district when the parties separated. Testimony established that he earned somewhat over $1,000 per month in the previous year. Joseph, however, had an annuity that paid him more than $1,800 per month as part of a settlement. Although the marital estate included a home and acreage, the parties had only about $12,000 in equity on their real property.

The divorce proceedings dragged on for some time in part because the trial court had a congested docket but also because the parties refused to cooperate or compromise in any way.

-1-

The parties also failed to conduct discovery, failed to inventory the numerous items of personal property, and did not marshal the proofs necessary to support their claims about the property disputes. The trial court held a bench trial over two days in November 2012 but was unable to complete the proofs. It continued the bench trial in May 2013. Later in May 2013, the trial court issued an interim order disposing of some personal property.

In August 2013, Joseph moved to hold Teresa in contempt of the interim order after she allegedly interfered with his attempt to retrieve property awarded to him. The trial court entered an order compelling Teresa to give Joseph access to the marital home and property in order to retrieve his property during a specified period of time. On two separate occasions in August and September 2013, Joseph forced his way into the pole barn on the marital property to take possession of personal property.

In October 2013, Teresa moved to have Joseph held in contempt for needlessly damaging the pole barn. She also alleged, among other things, that he took personal property that had not been awarded to him. In January 2014, Teresa amended her motion to include additional details and to assert that Joseph wrongfully took tens of thousands of dollars of marital property.

In May 2014, before it had resolved the newest contempt dispute, the trial court issued an opinion and order addressing the division of the marital estate, the award of spousal support, and Teresa's request for attorney fees. The court found that the real estate had a value of $77,000 and that the parties had $12,007 in equity. It noted that the appraisal took into consideration that the home was deteriorating and had "missing roof shingles, a collapsed outbuilding, a non-functional furnace, interior mold, a well problem and questionable electrical service." The court stated that Teresa did not convince it that she took any steps to maintain the property, let alone improve it.

The trial court determined that the real property should be awarded to Joseph, subject to Teresa's right to possess the property for one year while Joseph continued to pay the mortgage. The court indicated that the award of possession was in lieu of spousal support. It did, however, condition her possession on the payment of property taxes and insurance. The court also ordered her to remove the mold, correct the water damage, and repair or replace the missing roof tiles, and repair or reimburse Joseph for the repair of the well from her share of the proceeds from an auction of the parties' personal property. The court also ordered her to maintain the property during the year. The court ordered Joseph to pay Teresa one-half of her equity in the home upfront and the remaining half after she vacated the real property.

The trial court indicated that the identified personal property had been disposed by order or at the auction. It provided further that the property that had not been adequately identified at trial was awarded to the current possessor, whoever that might be. It divided the Wiser retirement account equally between the parties. The court recognized that Joseph had a retirement account with the school district that was not yet vested and found that its present value was uncertain. It nevertheless ordered Joseph to pay $1,000 over the next two years to Teresa for her share of that account and ordered the remaining value to go to Joseph.

The trial court ordered the parties to pay their own outstanding debts and authorized Joseph to pay his lawyer an amount equal to the amount paid to Teresa's lawyer from the

proceeds of the auction. The remaining balance was to be split equally. The court ordered the parties to pay their own attorney fees. It explained that neither party conducted any discovery to narrow the issues and "unjustifiably generated controversy, provoked each other, bickered . . . and thus 'fueled the litigation fires' to their mutual financial disadvantage." The court also ordered each party to pay his or her own debts incurred after the separation.

The trial court found that the parties' marriage had been deteriorating for some time and that both parties took actions to provoke the other. Accordingly, it found that neither party was significantly more at fault than the other. It also stated that neither party proved that the other was capable of working and found that it was unknown whether either would return to work. The court indicated that "equity warranted" an award of spousal support to Teresa, but stated that it was awarding her possession of the home for one year in lieu of spousal support and that the award would be "modifiable after one year and terminate[d] upon death or remarriage or cohabitation . . . with an unrelated male." It also "found" that Teresa had "in effect" been receiving temporary spousal support by her exclusive use of the marital home for the past three years. Finally, the court stated that, barring a significant change, such as Joseph's return to work, it would not order additional spousal support after the first year.

The trial court signed the judgment of divorce on June 10, 2014. The judgment was for the most part consistent with the court's opinion and order. The court specified in the judgment that Teresa would have her sole occupancy from May 7, 2014, to May 7, 2015. It also wrote that the Wiser retirement account would be divided "equitably" rather than equally.

In June 2015, after the trial court denied her motion for relief from judgment, Teresa appealed by right the judgment of divorce in this Court. This Court dismissed the appeal for lack of jurisdiction because the divorce provided that the Wiser retirement account must be divided "equitably," which did not resolve the claim to that asset. As such, the judgment of divorce was not a final judgment. See *Loofboro v Loofboro*, unpublished order of the Court of Appeals, entered July 15, 2015 (Docket No. 328150). The trial court entered an order amending the judgment of divorce to divide the Wiser retirement account equally in October 2015.

Teresa again appealed the judgment of divorce in this Court in November 2015.

## II. SPOUSAL SUPPORT

### A. STANDARDS OF REVIEW

Teresa first argues that the trial court erred in several respects when it awarded her spousal support that was limited to possession of the marital home for one year without the obligation to pay the mortgage. This Court reviews de novo whether the trial court properly interpreted and applied the relevant court rules and statutory provisions. *Kaeb v Kaeb*, 309 Mich App 556, 564; 873 NW2d 319 (2015). This Court also reviews de novo the proper construction of a judgment of divorce. *Neville v Neville*, 295 Mich App 460, 466; 812 NW2d 816 (2012). This Court, however, reviews the factual findings underlying the trial court's application of the law for clear error. *Kaeb*, 309 Mich App at 564. A trial court's findings are clearly erroneous when, after reviewing the record, this Court is left with the definite and firm conviction that the trial court made a mistake. *Loutts v Loutts*, 298 Mich App 21, 26; 826 NW2d 152 (2012). This

Court reviews for an abuse of discretion a trial court's decision to order spousal support. *Id.* at 25. A trial court abuses its discretion when it selects an outcome that is outside the range of reasonable and principled outcomes. *Id.* at 26.

## B. ANALYSIS

The Legislature has authorized trial courts to order spousal support "if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party." MCL 552.23(1). The court may order support "in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case." MCL 552.23(1). "The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished." *Berger v Berger*, 277 Mich App 700, 726; 747 NW2d 336 (2008). When dividing a marital estate, trial courts should consider a variety of factors whenever they are relevant to the circumstances of the case:

> "(1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992).]

## 1. RETROACTIVE SUPPORT

On appeal, Teresa argues that the trial court erred when it ordered that she had received temporary spousal support during the three years that she exclusively occupied the marital home before the judgment of divorce without having to pay the mortgage. She maintains that the trial court did not have the authority to order this retroactive support.

The trial court did not order Joseph to provide Teresa with any support during the pendency of this divorce proceeding. Joseph testified that he paid the mortgage and taxes on the marital home, but he stated that he did so to preserve his own credit. That is, Joseph voluntarily continued to pay the mortgage even though he no longer resided on the property to preserve his credit and—presumably—to maintain a significant marital asset. Accordingly, there was no support order that the trial court could have improperly retroactively modified. See MCL 552.603(2) ("Retroactive modification of a support payment due under a support order is permissible with respect to a period during which there is pending a petition for modification, but only from the date that notice of the petition was given to the payer or recipient of support."). In addition, it appears from the trial court's opinion and order that it did not order that these payments retroactively be treated as spousal support payments.

After reviewing the necessities and circumstances of the parties, the trial court found that it would be appropriate to order spousal support. The court specifically found that equity warranted an order of support for Teresa because of her "disability" and her "need for handicap accessible housing and adequate time to seek alternate housing when she leaves the marital home." The court determined that Teresa should continue to have exclusive possession of the marital home for one year and it ordered Joseph to pay the mortgage for that year, which it found

was approximately $750 per month, even though he would also have to pay for his own housing elsewhere. The court stated that Teresa's exclusive possession was "in lieu of monthly spousal support" and was to be "treated as spousal support which is modifiable after one year and terminates upon death or remarriage or cohabitation of [Teresa] with an unrelated male." It further found that Teresa had, "in effect, been receiving temporary spousal support for three years prior to this order," by way of her exclusive possession of the marital home while Joseph had been paying the mortgage. Finally, the court stated that, barring "a significant change in circumstances such as [Joseph's] return to employment in the next year, no additional spousal support will be awarded to [Teresa]."

The trial court characterized Teresa's possession of the home as modifiable spousal support and provided that the support would terminate upon Teresa's remarriage. From this, it is evident that it intended to award Teresa modifiable spousal support, not alimony in gross. See *Staple v Staple*, 241 Mich App 562, 564-568; 616 NW2d 219 (2000) (discussing the difference between periodic alimony—also referred to as spousal support—and alimony in gross paid over time and stating that the court's intent governs whether the award is support or alimony in gross). The court did state that it would be unlikely to order additional support beyond the year absent a significant change in circumstances, but an order of spousal support for a term is modifiable even after the expiration of the term. See MCL 552.28 (granting trial courts the authority to "revise and alter the judgment" with respect to an order of alimony or an allowance); *Gates v Gates*, 256 Mich App 420, 433-434; 664 NW2d 231 (2003) (holding that an order of support for a term of years is modifiable even after the expiration of the term of years). Moreover, the trial court recognized that Joseph had not been previously ordered to pay support, but asserted that he had "in effect" been doing so by paying the mortgage on the home. The court appears to have made this assertion to explain the propriety of the unusual form of the support that it actually ordered and why that support might be appropriate considering the parties' circumstances.

The judgment was not as clear as the opinion and order, but it nevertheless incorporated the substantive provisions of the opinion and order. It provided Teresa with exclusive possession of the marital home from May 7, 2014 to May 7, 2015. The trial court ordered Joseph to continue paying the mortgage during that time without possession "in consideration of Spousal Support and shall be deemed Spousal Support for the purposes of this Judgment." The judgment included a statement that Teresa had not had her equity interest in the marital home reduced even though Joseph paid the taxes and insurance, and it provided that those payments along with the mortgage payments were "considered as spousal support that had already been paid." Later, the court clarified that it found that Teresa had "in effect" been receiving spousal support for three years before the judgment. It stated that Joseph would pay spousal support in the form of continued mortgage payments during the term of Teresa's exclusive possession of the marital home and indicated that, barring "a significant change in circumstances such as [Joseph's] return to employment in the next year, no additional spousal support will be awarded to [Teresa]."

When the related provisions are read in context and in light of the actual award of spousal support, it appears that the trial court did not order that the payments Joseph previously made on the mortgage be treated as spousal support. It stated that the prior payments were "considered *as* spousal support" (emphasis added) and that Teresa had "in effect" been receiving spousal support. By stating that it considered the prior payments to be in effect spousal support, the trial court recognized that it had not actually been ordered as spousal support. The context also

suggests that the court took these prior payments into consideration when it determined what would be suitable form and amount for Teresa's support. Consequently, Teresa's claim that the trial court improperly ordered retroactive spousal support is without merit.

## 2. FAILURE TO CONSIDER FACTORS

Teresa also maintains that the trial court improperly failed to consider Joseph's conduct—his abuse and infidelity—and failed to consider Teresa's "disability, age, income disparity, needs, and prior standard of living." It is, however, clear from the trial court's opinion and order that it did in fact consider the parties' prior conduct, health concerns, age, income, materials needs, and prior standard of living. Moreover, the judgment reflected the trial court's findings and conclusions of law from the opinion and order.

In the opinion and order, the trial court found that the parties' marital relationship had been deteriorating for some time—as could be seen from the "acrimonious divorce case and associated PPO litigation." The court stated that neither party had acted with civility during the litigation, and both parties had done things to provoke the other. On the basis of the evidence, it found that neither was "significantly more at fault than the other for the breakdown of the marriage relationship."

There was evidence from trial that both Joseph and Teresa had in fact contributed to the breakdown of the marriage. Joseph admitted that he was verbally abusive at times, and there was evidence that Joseph had begun to spend time with another woman during the marriage. However, there was undisputed testimony that the relationship was not romantic. Joseph also testified that he lost interest in his relationship with his wife over time as she became dependent on various medications after being injured in an accident. He related that she would spend all day in front of the computer and only go to bed in the earlier hours of the morning when he was rising for the day.

While Teresa claimed that Joseph was physically abusive, she testified that his physical abuse was limited to hitting her at night while they were sleeping because she ostensibly came over to his side of the bed. She also said he threw tools at her when they used to repair vehicles together and then blamed her for not getting out of the way. Joseph denied that he was going to hurt Teresa and said he did not understand the accusations against him. Although the trial court might have found that Joseph was abusive in some respect from this testimony, the testimony did not persuasively establish that Joseph was physically violent, and it was for the trial court to ultimately assess the credibility of the witnesses and resolve the factual dispute over fault. See MCR 2.613(C). On this record, we conclude that the trial court did not clearly err when it found that neither party was significantly more at fault for the breakdown of the marriage. *Loutts*, 298 Mich App at 26.

The trial court also recognized in its opinion and order that the parties had been married a long time, acknowledged their ages, and found that Joseph had contributed "substantially" more to the joint estate than Teresa. It also stated that both parties had a limited lifestyle during the marriage: "The parties have been living a life style which is barely above the subsistence level in [Teresa's] case and only slightly more substantial in the case of [Joseph], considering his current medical leave and the debt burden he has born and will continue to bear over the next year." The

court listed the property division, which was roughly equal. The court recognized that neither party had to support anyone else and that neither wasted the marital estate before the divorce. It did, however, find that Teresa had allowed the marital home to deteriorate during the period of her exclusive possession.

Examining the trial court's opinion and order as a whole, it is evident that the trial court considered all of the relevant factors applicable to the request for spousal support and determined that Teresa should receive spousal support. Therefore, the trial court did not err by failing to consider these factors, see *Sparks*, 440 Mich at 159-160, and its decision to order Joseph to pay limited spousal support to ensure that Teresa could maintain her modest lifestyle fell within the range of reasonable outcomes, *Loutts*, 298 Mich App at 26.

### 3. EVIDENCE AT TRIAL

Teresa also maintains that the trial court improperly considered evidence that was not presented at trial when it found that Joseph was not working. More specifically, she argues that the trial court should have found that Joseph was employed and employable because the undisputed evidence at trial established that he was in fact earning a salary as a bus driver and was capable of working in some capacity.

In its opinion and order, the trial court found that both parties were "beset by health problems" that made it "doubtful" that either could earn significant income from employment in the "foreseeable future." The court noted that neither party had advanced education, special training, or unique skills that were readily marketable. It found that Joseph had better general health and that Teresa had demonstrated a need for "handicap accessible housing, which [was] available in the marital home, but may be difficult to find at an affordable price in the local market." The court remarked that both parties felt that the other could earn more, but it found that the parties failed to present evidence "to demonstrate that either party can work" or that either would be able to return to work "in any proven capacity or at a proven wage rate."

At trial, Joseph testified that he was working as a bus driver and that he earned over $13,000 in the year. He testified that he hoped to be able to continue working, but he suggested that he might not be able to do so as a result of an undiagnosed muscle condition that runs in his family. He testified that he had experienced some of the symptoms related to the disorder; however, there was no medical evidence to establish that he had a muscle condition or would be unable to work in the foreseeable future as a result of that condition.

After the close of proofs, Joseph submitted a proposed set of findings. He stated in his proposal that he was no longer working as a bus driver "for medical reasons" and that he did not know when he would be "medically cleared" to go back to work. As a result, he claimed that he made $1,080 less each month. Joseph submitted a handwritten note on a doctor's letterhead, which provided that "Joseph Loofboro is off work for medical reasons until rechecked in one month." The trial court apparently accepted this evidence and found that Joseph was not working and would be unable to return to work in the foreseeable future.

There was, however, no evidence at trial—i.e., before the close of proofs-- that Joseph was then incapable of working. Indeed, the undisputed evidence showed that he had been

-7-

earning more than $1,000 per month as a driver for the local school district. There was also no evidence that he did in fact have a medical condition that might interfere with his ability to work and no evidence that he was then unable to work as a result of that condition. Consequently, the trial court clearly erred to the extent that it found that Joseph could not work and found that there was no evidence that he would be able to return to work. Furthermore, these erroneous findings were not harmless.

The trial court specifically referred to Joseph's limited income and stated that it would not order further spousal support unless Joseph returned to work. The trial court also considered the fact that Joseph had to pay for his own housing during the period within which Teresa had exclusive possession of the marital home. Had the trial court found that Joseph was earning or capable of earning more than $1,000 per month in addition to his income from the annuity, it might have determined that Teresa should receive some modest monetary spousal support or might have more equitably modified the terms applicable to her continued possession of the marital home. As such, we affirm the trial court's decision to award spousal support to Teresa but remand this case to the trial court to recalculate the amount of the award in light of the parties' actual abilities, needs, and circumstances so that both will have suitable support and neither will be impoverished. MCL 552.23(1); *Berger*, 277 Mich App at 726.

## III.  THE RETIREMENT ACCOUNTS

### A.  STANDARD OF REVIEW

Teresa next argues that the trial court erred in several respects when it divided certain funds. This Court reviews for clear error the trial court's finding that an asset is part of the marital estate and reviews whether the trial court's dispositional ruling was fair and equitable in light of the facts. *Sparks*, 440 Mich at 151-152.

### B.  ANALYSIS

In her brief on appeal, Teresa asserts that the trial court should have divided three retirement funds: Joseph's annuity, his "Teamster" pension, and his pension from Plainwell schools. She states that it was established at trial that each was a marital asset and then argues that the trial court erred by failing to divide them. In making these allegations, Teresa does not mention actual trial testimony or records that show that each asset actually existed, that the asset was in fact a marital asset, or the value of the asset. She also does not discuss the trial court's actual disposition of each asset and—aside from the standard of review—does not discuss the applicable law. By failing to meaningfully discuss the evidence and law, Teresa has abandoned this claim of error on appeal. *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Even when considered on the merits, Teresa has not established that the trial court erred.

It was clear throughout the lower court proceedings that the lawyers for both parties failed to use discovery to narrow the issues for resolution at trial, failed to obtain pertinent documentation, and failed to properly inventory and value the property at issue. There was, for that reason, very little testimony to establish the cash value of the annuity, or to establish the existence, terms, or value of the two purported retirement plans. And the trial court repeatedly

expressed frustration with the parties' lack of preparation, which hindered its ability to resolve the disputes and render its decision.

As a result of the deficiencies in the parties' preparation and proofs, it was unclear whether Joseph's annuity was personal to him or a marital asset. But see *Pickering v Pickering*, 268 Mich App 1, 11; 706 NW2d 835 (2005) (stating that funds meant to compensate a party for pain and suffering are generally not marital property). There was also no competent evidence establishing the liquidated value of the annuity at the time of trial. In addressing this asset, the trial court recognized these deficiencies. The court even inquired whether there was evidence "which apportions the total amount that funds the annuity in terms of [Joseph's] pain and suffering, his job loss past, his job loss future, [Teresa's] loss of consortium, or future medical?" After the court identified that proofs that would be necessary to establish whether the annuity was part of the marital estate and to divide it properly, the court inquired whether the parties would prefer to have the court merely consider it as "income on the spousal support issue." Teresa's lawyer asked to discuss the issue with her client and the court allowed her to do so. After a pause in the proceedings, Teresa's lawyer agreed with the court's suggestion: "Your Honor I have discussed with my client and she would like it to be considered as income for alimony purposes." Joseph's lawyer stated that he did not protest that resolution of the dispute. By affirmatively agreeing with the trial court's suggestion that the annuity should only be considered as income for Joseph, Teresa waived any claim that the trial court erred by failing to divide it as a marital asset. *Varran v Granneman*, 312 Mich App 591, 623; 880 NW2d 242 (2015).

The parties likewise failed to present evidence to establish the value of Joseph's pension from the school district. At trial, Joseph testified that he had some pension from the school district, but he suggested that it had no value until he completed 10 years of service. There was otherwise no testimony or other evidence to establish the value of the pension. Despite the lack of evidence, the trial court found that the pension was a marital asset and determined that it must have some present value. It ultimately ordered Joseph to pay Teresa $1,000 over a period of two years to compensate her for her share of the pension and awarded the remaining value—whatever that might be—to Joseph. In the absence of evidence to establish the actual value of the pension earned during the term of the marriage, the trial court's decision to award Teresa $1,000 over two years appears equitable. See *Sparks*, 440 Mich at 152.

The parties presented even less evidence concerning Joseph's possible pension from the period when he was a commercial truck driver. There was no evidence of the pension's value and no evidence that the pension still existed, if it ever existed, and no evidence tending to show when Joseph earned the pension. Because there was no evidence to establish the existence and value of this pension, the trial court's failure to divide this asset was not inequitable. *Id.*

The trial court also did not err by failing to consider fault in the division of these assets. As noted, the trial court found that neither party was more at fault for the breakdown of the marriage than the other, which finding was not clearly erroneous. Similarly, given the parties' failure to present adequate evidence on the value of the retirement plans, it cannot be said that the valuations had become stale by the time the trial court entered the judgment of divorce.

Considering the totality of the evidence involving the retirement plans and Teresa's agreement with the trial court's handling of the annuity, the trial court's division of the retirement plans was not inequitable. *Id.* at 151-152.

## IV. ATTORNEY FEES

### A. STANDARDS OF REVIEW

Teresa also argues that the trial court abused its discretion when it refused to order Joseph to pay her attorney fees. This Court reviews a trial court's decision to award attorney fees as part of a judgment of divorce for an abuse of discretion. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). However, this Court reviews the findings underlying the trial court's decision for clear error. *Id*.

### B. ANALYSIS

In claiming that the trial court abused its discretion when it refused to award her attorney fees, Teresa finds fault with the trial court's failure to consider the disparity between her income and Joseph's income and with the court's decision to ignore its own finding that Joseph's behavior caused unnecessary litigation. Teresa does not cite or discuss the law applicable to an award of attorney fees in a divorce action, and does not discuss the actual rationale for the trial court's decision to deny her request. By failing to adequately address this claim of error or examine the actual basis for the trial court's decision, Teresa abandoned this claim of error on appeal. See *Mitcham*, 355 Mich at 203. In any event, the trial court's decision to deny her request for attorney fees did not fall outside the range of reasonable outcomes. *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008).

The trial court had the authority to order a party to a divorce action to pay "any sums necessary to enable the adverse party to carry on or defend the action, during its pendency." MCL 552.13(1). Michigan's court rules also provide that a party to a divorce may obtain his or her attorney fees by showing that he or she is "unable to bear the expense of the action, and that the other party is able to pay" or by showing that "the attorney fees and expenses were incurred because the other party refused to comply with a previous court order . . . ." MCR 3.206(C)(2).

In this case, there was evidence that both parties had very limited income and assets. Additionally, the trial court found that *both* parties increased the costs and length of the litigation. It noted that the parties failed to utilize discovery, generated controversy, provoked each other, bickered needlessly, and " 'fueled the litigation fires' to their mutual financial disadvantage." The court also recognized that Teresa had been able to pay her attorney fees from the auction proceeds and determined that Joseph should be allowed to take a like amount from the auction proceeds to pay his attorney fees. Finally, the court stated that "neither party can reasonably or equitably expect the other to pay a share of their own attorney's fees."

The trial court did not clearly err when it found that both parties bore responsibility for increasing the costs of the litigation. It also correctly noted that Teresa was able to pay her attorney fees from the proceeds of the auction. Under these facts, the trial court's decision to deny Teresa's request to have Joseph pay her fees fell within the range of reasonable outcomes.

## V.  THE MARITAL HOME

### A.  STANDARD OF REVIEW

Teresa contends that the trial court also erred by awarding the marital home to Joseph. This Court reviews for clear error the trial court's findings of fact and reviews the trial court's dispositional ruling to determine whether it was fair and equitable in light of the facts. *Sparks*, 440 Mich at 151-152.

### B.  ANALYSIS

"The goal in distributing marital assets in a divorce proceeding," this Court has stated, "is to reach an equitable distribution of property in light of all the circumstances." *Gates*, 256 Mich App at 423.  The trial court's division of the assets "need not be mathematically equal, but any significant departure from congruence must be clearly explained by the trial court." *Id*.

The parties' marital real estate was located in a rural area and was in marginal condition. The parties did not dispute that the property was properly appraised at approximately $77,000 in 2012, even with the property's added acreage.  In addition, it was undisputed that the parties still owed approximately $65,000 on the note and mortgage for the property.  There were indications that the property had deteriorated and needed repairs while Teresa lived there alone during the pendency of the divorce.  Testimony also established that the parties acquired the property from Joseph's father and that Joseph had been raised on the property.  Given the modest amount of equity in the home and Joseph's family history with the property, it was not inequitable for the trial court to award the real property and its debt to Joseph with the requirement that he compensate Teresa for her share of the equity. *Sparks*, 440 Mich at 151-152.

On appeal, Teresa argues that the trial court should have awarded her the real property because it was handicap accessible for her.  But Joseph testified that he made the home handicap accessible for himself as well as Teresa.  And the trial court found that there was insufficient evidence to determine the "scope, timing and costs of those alterations."  Moreover, the trial court awarded Teresa continued possession of the property for one year as a form of spousal support in order to provide her with time to find alternate housing that was also handicap accessible.  Thus, the court specifically examined the equities involved in the parties' claim to the marital home and arrived at a solution that divided the value equally, gave Teresa time to find a suitable home, and preserved the property with Joseph's family.  There is no merit to Teresa's claim that the trial court failed to consider the equities of her situation when making the award.

Teresa also argues that the trial court's decision to award the marital real estate to Joseph provided him with a windfall because the original appraisal had become stale, and property values had soared in the interim between the appraisal and the judgment of divorce.  Teresa has not presented any evidence that the property's value soared during the relevant period.  Even setting aside Teresa's failure to obtain a new appraisal during the lower court proceedings, we again note that the trial court found that the improvements on the real property were dilapidated and that Teresa did not perform the necessary repairs to maintain the property in even that condition.  There was evidence that the home's well failed and had to be repaired during the pendency of the divorce.  Joseph asserted that he had to pay to repair it to ensure that the home

remained habitable. Thus, there was evidence from which the trial court could have concluded that the property likely deteriorated during the pendency of the divorce proceedings. Moreover, although the delays in the lower court proceedings were to some extent the result of the trial court's congested docket, the record showed that the parties protracted the litigation by failing to conduct discovery and by disputing even minutiae before the trial court. Consequently, the parties bore a significant portion of the responsibility for any deficiency in the appraisal.

Teresa also argues that the trial court gave Joseph a windfall by ordering her to improve the property without any contribution from Joseph and without providing her with additional equity for the improvements. The trial court conditioned Teresa's award of exclusive possession of the marital home by requiring her to undertake any repairs required during the period of her occupancy. It also ordered her to rectify four existing problems with the property: she had to remove the interior mold, correct any water damage, repair or replace the missing or damaged roof tiles identified in the appraisal, and fix and maintain the well.

There were indications that the well failed during a period when Teresa had exclusive possession. Thus, as the parties initially argued before the trial court, the value of the repair was actually a cost necessary to maintain the value of the property at the assessed value and not an improvement. The requirement that Teresa remove the mold, correct the water damage, and repair or replace the roof tiles also did not amount to an order to improve the property. Rather, the court merely ordered Teresa to make those repairs that were reasonably necessary to prevent the home from deteriorating further.

The trial court's disposition of the marital home was not inequitable under the totality of the circumstances. *Gates*, 256 Mich App at 423.

## VI. FINAL JUDGMENT

### A. STANDARDS OF REVIEW

Finally, Teresa argues that the trial court unduly delayed the proceedings and erred when it characterized the amended judgment of divorce as a final judgment because it had not yet resolved her motion to find Joseph in contempt. This Court reviews de novo the proper interpretation and application of statutes and court rules. *Kaeb*, 309 Mich App at 564.

### B. ANALYSIS

On appeal, Teresa notes at length that the trial court took a significant amount of time to resolve the parties' various disputes. She does not, however, discuss the parties' role in lengthening the litigation and does not identify how the delay harmed her or otherwise warrants appellate relief. She does state that the trial court "violated the standard of review in regards" to MCR 2.602(A)(3), which requires a trial court to state whether the judgment "resolves the last pending claim and closes the case," but she does not explain what that court rule has to do with the delay. Instead, she merely asserts that the trial court incorrectly stated that the judgment of divorce resolved the last pending claim when, in her view, there were claims remaining. But she does not challenge this Court's jurisdiction to decide her appeal as an appeal of right. See MCR 7.203(A)(1) (conferring jurisdiction on this Court of an appeal of right from a final judgment or

-12-

order). By failing to adequately explain her claim of error and failing to relate that claim in any meaningful way to the law, Teresa has abandoned it on appeal. *Mitcham*, 355 Mich at 203.

Nevertheless, this Court is not bound by the trial court's characterization of a judgment as final. See, e.g., *McCarthy & Assoc, Inc v Washburn*, 194 Mich App 676, 679-680; 488 NW2d 785 (1992) (stating that even a trial court's certification of an order as final does not automatically require this Court to treat the order as a final order). Rather, this Court will independently determine whether it has jurisdiction, even if the parties themselves do not challenge jurisdiction. See *Clohset v No Name Corp (On Remand)*, 302 Mich App 550, 560; 840 NW2d 375 (2013). Teresa's assertion that the court's judgment of divorce was not a final judgment implicates this Court's jurisdiction, even though she did not frame her claim that way. If Teresa's motion to find Joseph in contempt for breaking into the pole barn and taking personal property could be said to involve a "claim" or involve the adjudication of the parties' "rights and liabilities" within the meaning of MCR 7.202(6)(a)(*i*), this Court would not have jurisdiction over her claim of appeal as an appeal of right, see MCR 7.203(A)(1), and we could again dismiss it for lack of jurisdiction. MCR 7.216(A)(10).

It is, however, evident that the trial court completed the contempt proceedings and found that Teresa had not demonstrated that Joseph acted in contempt of any of the trial court's orders. By denying Teresa's motion to find Joseph in contempt, the trial court effectively left the judgment of divorce as the final decree governing the division of the parties' marital estate and settling their rights and liabilities. Thus, to the extent that the trial court's judgment did not resolve all the claims or adjudicate all the rights and liabilities of the parties as of the time of Teresa's second appeal, we shall treat Teresa's appeal as though on leave granted. See MCR 7.203(B)(1); see also, e.g., *In re Morton*, 258 Mich App 507, 508 n 2; 671 NW2d 570 (2003).

Turning to the merits, we note that Teresa has asked this Court to reopen the proofs to allow her to assert a claim to the items that Joseph took from the pole barn and home, which were not on the list of items in the interim order. Stated another way, she asks this Court to order the trial court to revisit the award of personal property from the judgment of divorce. However, it is clear from the record that the contempt proceedings did not directly involve a dispute over the division of the marital estate.

Throughout the lower court proceedings, the trial court admonished the parties for failing to inventory and obtain valuations for the property in dispute. It also advised them to use discovery to narrow the disputes about the property. Nonetheless, the parties did not take any steps to compile a comprehensive inventory of the property. Instead, they made a list that included some, but not all of the items that were in dispute, and presented that to the trial court. In its opinion and order and in the judgment, the trial court indeed addressed the identified items.

As for the numerous items that the parties had not included on their list and did not address at trial, the court—out of frustration—orally suggested that whoever wanted the items could just take them. Joseph removed the personal property—which Teresa alleged at the contempt hearing included tens of thousands of dollars in tools—from the pole barn after the trial court suggested that it would award the unidentified property to the party in possession, but before the court entered the judgment of divorce. In the judgment of divorce, the trial court specifically addressed the numerous items of personal property that were not adequately

addressed by the parties at trial: "As to that trailer and the other items not specifically granted to the parties or sold at the auction, the current possessor of the item is granted its ownership and will pay any outstanding debt on that item." Accordingly, once the trial court entered its judgment, Joseph became the lawful owner of the personal property in his possession.

On appeal, Teresa in effect argues that her motion to find Joseph in contempt created a dispute over the award of those items. It did not. The sole issue for the trial court at the contempt proceeding was to determine whether Joseph acted in contempt of the trial court's orders when he used self-help to take possession of items, which the parties had not addressed at trial, before the trial court entered an order or judgment dividing the estate. A trial court speaks through its orders, not its oral pronouncements, *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009), and the trial court had not entered an order awarding the property Teresa now claims to any party and had not entered an order precluding either party from taking possession of any marital property stored in the pole barn. Even though Teresa felt aggrieved when Joseph took possession of the personal property, the trial court found that Joseph did not violate any order when he did so. Teresa has not challenged the trial court's resolution of the contempt dispute or established that the trial court's decision to award the property that the parties failed to adequately identify to the party in possession was inequitable under the circumstances. *Sparks*, 440 Mich at 151-152. Consequently, Teresa has not identified any error that would warrant reopening the case to allow the parties to raise additional claims to personal property that they did not properly identify before or during trial.

## VII. CONCLUSION

The trial court did not improperly order retroactive spousal support. It also did not abuse its discretion when it determined that Teresa required spousal support for her maintenance. However, because the trial court clearly erred when it found that Joseph was not working or capable of working and that error likely affected the court's determination of spousal support, we vacate the trial court's award of spousal support and remand this case to the trial court for the limited purposes of reassessing the amount of spousal support necessary to allow Teresa to maintain her standard of living. The trial court may—in its discretion—take additional testimony and evidence concerning any change in circumstances affecting the award of spousal support since entry of the judgment of divorce. In all other respects, we affirm.

We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Because neither party prevailed in full, we order that neither may tax costs. MCR 7.219(A).

/s/ Jane E. Markey
/s/ William B. Murphy
/s/ Patrick M. Meter

-14-